IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| NORTHEAST OHIO COALITION FOR THE HOMELESS, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> FRANK LAROSE, in his official capacity as Ohio Secretary of State, <br><br> Defendant. | Civil Action No. 1:23-cv-26 <br><br> District Judge: Judge Donald C. Nugent <br><br> Magistrate Judge: Jonathan D. Greenberg |

**MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE BY
SANDRA FEIX, MICHELE LAMBO, AND THE OHIO REPUBLICAN PARTY**

Sandra Feix, Michele Lambo (together, the "Election Workers"), and the Ohio Republican Party (collectively, the "Proposed Intervenors") respectfully move to intervene to defend the challenged provisions of House Bill 458 and House Bill 45 (collectively House Bill 458). The Proposed Intervenors support Ohio's reasonable, neutral, and effective changes to its election laws contained in House Bill 458, which ensure not only that it remains "easy to vote in Ohio," *Ohio Dem. Party v. Husted*, 834 F.3d 620, 628 (6th Cir. 2016), but also that Ohio's elections are secure and trusted by voters across the political spectrum. The Proposed Intervenors therefore seek to intervene to defend their substantial interest in the outcome of this litigation.

This Court should grant the Proposed Intervenors' motion to intervene, whether as a matter of right or discretion. Courts—including this Court—routinely grant intervention to political parties and voters in similar cases. *See, e.g.*, *A. Philip Randolph Inst. v. LaRose*, No. 1:20-cv-1908, 2020 WL 5524842 (N.D. Ohio Sept. 15, 2020); *League of Women Voters of Ohio v. LaRose*, No. 2:20-cv-3843, Dkt. No. 35 (S.D. Ohio Sept. 4, 2020); *Priorities USA v. Nessel*, No. 19-cv-13341, 2020 WL 2615504 (E.D. Mich. May 22, 2020); *Miller v. Blackwell*, 348 F. Supp. 2d 916,

919 n.3 (S.D. Ohio 2004). Here, the Ohio Republican Party seeks to protect its interest in preventing changes to the "competitive environment" of elections. *See Shays v. FEC*, 414 F.3d 76, 85 (D.C. Cir. 2005). As many courts have recognized, the Ohio Republican Party has a substantial and particularized interest in defending actions like this, to preserve the electoral environment and to ensure that Ohio carries out free, fair, and trusted elections. The Election Workers, too, have a substantial and particularized interest in upholding and abiding by election rules—such as those enacted in House Bill 458—that facilitate free and fair elections, and in knowing the rules by which they will judge elections while serving as precinct election officials. *See, e.g.*, Ohio Rev. Code §§ 3501.22, 3501.26. Further, as voters themselves, the Election Workers share an interest in free, fair, and trusted elections in Ohio. They also seek to protect their votes against dilution from the counting of invalid ballots in contravention of House Bill 458's requirements, and they seek certainty regarding their rights and obligations if they choose to exercise their statutory right to vote by methods affected by House Bill 458. *See id.* § 3509.01.

The Proposed Intervenors accordingly have a right to intervene because this motion is timely and they have a substantial interest in the validity of House Bill 458 that they can protect only by participating in this case. *See* Fed. R. Civ. P. 24(a)(2). Alternatively, the Court should exercise its discretion to allow the Proposed Intervenors to intervene because their defenses address questions before the Court. *See* Fed. R. Civ. P. 24(b). As required by Rule 24(c), the Proposed Intervenors have attached a proposed Motion to Dismiss Plaintiffs' Amended Complaint and, alternatively, a proposed Answer to Plaintiffs' Amended Complaint.

## BACKGROUND

*The Proposed Intervenors*. The Ohio Republican Party is a "major political party" as defined by Ohio Revised Code § 3501.01(F)(1). Its general purpose is to promote and assist

Republican candidates who seek election or appointment to partisan federal, state, or local offices in Ohio. It works to accomplish this purpose by, among other things, devoting substantial resources toward educating, mobilizing, assisting, and turning out voters in Ohio. The Ohio Republican Party has made significant contributions and expenditures to support Republican candidates in Ohio for many election cycles and is doing so again for future elections. It has a substantial interest in ensuring that Ohio runs free, fair, and trusted elections under Ohio law.

Each of the Election Workers has served as a precinct election official in past Ohio elections and intends to do so again in future elections. In addition to their service on Election Day, each of the Election Workers regularly votes in both primary and general elections and intends to vote for candidates in all races on their respective ballots in future elections, including but not limited to the races for U.S. Senate, U.S. House of Representatives, Ohio Senate, and Ohio House of Representatives. Both as voters and as election workers, the Election Workers have a particularized interest in knowing the exact requirements for mailing, dropping off, or curing ballots and for judging those ballots so that they may accurately carry out their obligations as election workers and voters. They will, after all, need to enforce those requirements as election workers and follow those requirements as voters. Additionally, they each have an interest in certainty regarding the use of photo ID for in-person voting.

*Procedural Background.* This case is in its infancy. Plaintiffs sued the Ohio Secretary of State to challenge House Bill 458 on January 6, 2023, and filed an amended complaint on January 27, 2023. The Ohio Secretary of State answered on March 7, 2023. The Proposed Intervenors seek to intervene at this early stage to protect their interests and to avoid any prejudice or delay to the parties and the Court's resolution of this case.

# ARGUMENT

Whether as of right or as a matter of discretion, this Court should grant the Proposed Intervenors' motion under Rule 24.

## A. The Proposed Intervenors Have a Right to Intervene Under Rule 24(a).

The "court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede [their] ability to protect [their] interest[s], unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). Federal courts have long applied Rule 24 "in favor of potential intervenors," *Purnell v. City of Akron*, 925 F.2d 941, 950 (6th Cir. 1991), because a person should not "be deprived of his or her legal rights in a proceeding to which such person is neither a party nor summoned to appear," *Jansen v. City of Cincinnati*, 904 F.2d 336, 340 (6th Cir. 1990). This principle carries even more force in election-law cases, "and for good reason—the right to vote 'is regarded as a fundamental political right, because [it is] preservative of all rights.'" *Serv. Emps. Int'l Union Local 1 v. Husted*, 515 F. App'x 539, 543 (6th Cir. 2013) (per curiam) (quoting *Yick Wo v. Hopkins*, 118 U.S. 356, 370 (1886)).

A proposed intervenor satisfies Rule 24(a) if: (1) the motion to intervene is timely; (2) the proposed intervenor has a substantial legal interest in the case; (3) the proposed intervenor's ability to protect its interest will be impaired without intervention; and (4) the existing parties may not adequately represent the proposed intervenor's interest. *Grutter v. Bollinger*, 188 F.3d 394, 397–98 (6th Cir. 1999); *Mich. State AFL-CIO v. Miller*, 103 F.3d 1240, 1245 (6th Cir. 1997). The Proposed Intervenors meet each requirement.

### 1. This motion is timely.

The Sixth Circuit considers several factors when evaluating the timeliness of a motion to intervene, including: (1) the point to which the case has progressed; (2) the purpose for

4

intervention; (3) when the intervenors knew or should have known of their interest in the case; (4) prejudice to the parties; and (5) any unusual circumstances that support (or cut against) intervention. *See Jansen*, 904 F.2d at 340. No factor is dispositive; rather, a court evaluates timeliness "in the context of all relevant circumstances." *Id.*

The Proposed Intervenors' motion to intervene is undoubtedly timely. This case has just begun. Plaintiffs filed their amended complaint less than two months ago. The Ohio Secretary of State submitted his answer only 14 days ago, and discovery has not begun in earnest. *See Blount-Hill v. Ohio*, 244 F.R.D. 399, 402 (S.D. Ohio 2005) (granting motion to intervene filed "nearly five months after Plaintiffs' Complaint was filed" where "[l]ittle discovery has been conducted"); *see also Nessel*, 2020 WL 2615504, at *2–3 (granting intervention where "little to no discovery has taken place"). In short, "nothing has happened in this case" yet, "so no party is prejudiced by the timing." *In re 2016 Primary Election*, 2016 WL 1392498, at *2 (S.D. Ohio Apr. 8, 2016). And by moving to intervene at this "initial stage," the Proposed Intervenors will not delay the proceedings. *See Miller*, 103 F.3d at 1245; *Priorities USA v. Benson*, 448 F. Supp. 3d 755, 762–63 (E.D. Mich. Mar. 24, 2020).

### 2. The Proposed Intervenors have a substantial legal interest.

The Proposed Intervenors also have a substantial legal interest in this case. The Sixth Circuit subscribes to a "rather expansive notion of the interest sufficient to invoke intervention of right." *Grutter*, 188 F.3d at 398 (citation omitted). An intervenor's interest in the case need not, for example, satisfy the requirements for standing. *See Miller*, 103 F.3d at 1245. And courts should resolve "close cases" "in favor of recognizing an interest under Rule 24(a)." *Id.* at 1247.

As in previous election cases, there can be "no dispute that the Ohio Republican Party ha[s] an interest in the subject matter of this case, given the fact that changes in voting procedures could affect candidates running as Republicans and voters who are members of the Ohio Republican

Party." *Ohio Democratic Party v. Blackwell*, No. 2:04-cv-1055, 2005 WL 8162665, at *2 (S.D. Ohio Aug. 26, 2005). As evidenced in the lengthy footnote below, courts across the country and in Ohio in particular have recognized that political party committees have a substantial interest in intervening in cases implicating elections laws and procedures.[1] Simply put, Plaintiffs' lawsuit

---

[1] *See, e.g.*, *La Union Del Pueblo Entero v. Abbott*, 29 F.4th 299 (5th Cir. 2022) (granting intervention of right to county party committees, Republican National Committee, National Republican Senatorial Committee, and National Republican Congressional Committee); *United States v. Georgia*, No. 1:21-cv-2575 (N.D. Ga. July 12, 2021) (granting intervention to the RNC, NRSC, and Georgia Republican Party); *Concerned Black Clergy of Metro. Atlanta, Inc. v. Raffensperger*, No. 1:21-cv-1728 (N.D. Ga. June 21, 2021) (granting intervention to the RNC, NRSC, NRCC, and Georgia Republican Party); *Coalition for Good Governance v. Raffensperger*, No. 1:21-cv-02070 (N.D. Ga. June 21, 2021) (same); *New Georgia Project v. Raffensperger*, No. 1:21-cv-1229, 2021 WL 2450647 (N.D. Ga. June 4, 2021) (same); *Ga. State Conf. of the NAACP v. Raffensperger*, No. 1:21-cv-1259 (N.D. Ga. June 4, 2021) (same); *Sixth Dist. of the African Methodist Episcopal Church v. Kemp*, No. 1:21-cv-1284 (N.D. Ga. June 4, 2021) (same); *Asian Ams. Advancing Justice-Atlanta v. Raffensperger*, No. 1:21-cv-1333 (N.D. Ga. June 4, 2021) (same); *VoteAmerica v. Raffensperger*, No. 1:21-cv-1390 (N.D. Ga. June 4, 2021) (same); *Wood v. Raffensperger*, No. 1:20-cv-5155 (N.D. Ga. Dec. 22, 2020) (granting intervention to the DSCC and Democratic Party of Georgia); *Alliance for Retired Americans v. Dunlap*, No. CV-20-95 (Me. Super. Ct. Aug. 21, 2020) (granting intervention to the RNC, NRSC, and Republican Party of Maine); *Mi Familia Vota v. Hobbs*, Doc. 25, No. 2:20-cv-1903 (D. Ariz. June 26, 2020) (granting intervention to the RNC and NRSC); *Ariz. Democratic Party v. Hobbs*, Doc. 60, No. 2:20-cv-1143-DLR (D. Ariz. June 26, 2020) (granting intervention to the RNC and Arizona Republican Party); *Swenson v. Bostelmann*, Doc. 38, No. 20-cv-459 (W.D. Wis. June 23, 2020) (granting intervention to the RNC and Republican Party of Wisconsin); *Edwards v. Vos*, Doc. 27, No. 20-cv-340 (W.D. Wis. June 23, 2020) (same); *League of Women Voters of Minn. Ed. Fund v. Simon*, Doc. 52, No. 20-cv-1205 ECT/TNL (D. Minn. June 23, 2020) (granting intervention to the RNC and Republican Party of Minnesota); *Issa v. Newsom*, 2020 WL 3074351, at *4 (E.D. Cal. June 10, 2020) (granting intervention to the DCCC and Democratic Party of California); *Nielsen v. DeSantis*, Doc. 101, No. 4:20-cv-236-RH (N.D. Fla. May 28, 2020) (granting intervention to the RNC, NRCC, and Republican Party of Florida); *Priorities USA v. Nessel*, 2020 WL 2615504, at *5 (E.D. Mich. May 22, 2020) (granting intervention to the RNC and Republican Party of Michigan); *Thomas v. Andino*, 335 F.R.D. 364, 367 (D.S.C. 2020) (granting intervention to the South Carolina Republican Party); *Corona v. Cegavske*, Order Granting Mot. to Intervene, No. CV 20-OC-644-1B (Nev. Jud. Dist. Ct. Apr. 30, 2020) (granting intervention to the RNC and Nevada Republican Party); *League of Women Voters of Va. v. Va. State Bd. of Elections*, Doc. 57, No. 6:20-cv-24 (W.D. Va. Apr. 29, 2020) (granting intervention to the Republican Party of Virginia); *Paher v. Cegavske*, 2020 WL 2042365, at *2 (D. Nev. Apr. 28, 2020) (granting intervention to four Democratic Party entities); *Democratic Nat'l Comm. v. Bostelmann*, 2020 WL 1505640, at *5 (W.D. Wis. Mar. 28, 2020) (granting intervention to the RNC and Republican Party of Wisconsin); *Gear v. Knudson*, Doc. 58, No. 3:20-cv-278 (W.D. Wis. Mar. 31, 2020) (same); *Lewis v. Knudson*,

could "chang[e] the results of elections"—they ask the Court to enjoin Ohio law governing voting procedures—thus directly affecting the Ohio Republican Party, its candidates, and its members. *Benson*, 448 F. Supp. 3d at 764. And the Ohio Republican Party has a substantial interest in preventing changes to the "competitive environment" of elections. *See Shays*, 414 F.3d at 85. Because the Ohio Republican Party's candidates seek election "in contests governed by the challenged rules," it has an interest in "demand[ing] adherence" to those requirements. *Id.* at 88.

The Election Workers also possess significant and particularized interests in the subject matter of this litigation. Each has served as a precinct election official in previous elections and intends to do so again in future elections. Precinct election officials "perform all of the duties provided by law for receiving the ballots and supplies . . . and overseeing the casting of ballots during the time the polls are open," as well as other duties required by Ohio election law. Ohio Rev. Code § 3501.22. House Bill 458 "changes the legal landscape for what it takes to carry out [those] dut[ies]." *La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 306 (5th Cir. 2022). Thus, the Election Workers—as election judges who have a "role . . . in the enforcement" of the challenged provisions, *see Hollingsworth v. Perry*, 570 U.S. 693, 707 (2013)—have a substantial and particularized interest in upholding and abiding by election rules that facilitate free and fair elections, and in knowing the rules by which they will judge elections when they serve as precinct election officials in future elections. *Cf. Berger v. N.C. St. Conf. of the NAACP*, 142 S. Ct. 2191, 2203 (2022) ("[A] full consideration of the State's practical interests may require the involvement of different voices with different perspectives.").

---

Doc. 63, No. 3:20-cv-284 (W.D. Wis. Mar. 31, 2020) (same); *see also Democratic Exec. Cmte. of Fla. v. Detzner*, No. 4:18-cv-520-MW-MJF (N.D. Fla. Nov. 9, 2018) (granting intervention to the NRSC).

What is more, the Election Workers, as *voters*, have a separate interest in preventing their votes from being "debase[d] or dilute[ed]" by the counting of invalid ballots. *Reynolds v. Sims*, 377 U.S. 533, 555 (1964); *see Bush v. Gore*, 531 U.S. 98, 105 (2000); *see also, e.g.*, *Miller*, 348 F. Supp. 2d at 919 n.3 (granting intervention as of right to individual voters as third-party defendants, including so they could defend the law to "prevent possible dilution of their own votes"). The Election Workers also have a significant interest in maintaining certainty regarding their rights and obligations if they choose to exercise their statutory right to vote by absentee or mail-in ballot. *See* Ohio Rev. Code § 3509.01. Further, the Election Workers have an interest in certainty regarding early voting days, the use of photo ID for in-person voting, and the location of drop boxes for their ballots. For these reasons, courts have regularly granted intervention to voters in election litigation. *See, e.g.*, *Miller*, 348 F. Supp. 2d at 919 n.3; *Paher v. Cegavske*, 2020 WL 2042365, at *3 (D. Nev. Apr. 28, 2020); *see also, e.g.*, *Reynolds*, 377 U.S. at 541–42; *Democratic Nat'l Comm. v. Republican Nat'l Comm*, 543 U.S. 1304, 1304 (2004) (Souter, J., in chambers); *N.C. State Conference of the NAACP v. McCrory*, 831 F.3d 204, 219 (4th Cir. 2016); *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 232 (4th Cir. 2014).

The Election Workers and the Ohio Republican Party therefore each satisfy Rule 24(a)'s interest requirement.

### 3. The Proposed Intervenors' ability to protect their interests will be harmed if they cannot intervene.

The Proposed Intervenors' ability to protect these interests may well hinge on intervention, which satisfies the third prong of the intervention analysis. "[A] would-be intervenor must show only that impairment of its substantial legal interest is *possible* if intervention is denied." *Miller*, 103 F.3d at 1247 (emphasis added). "This burden is minimal." *Id.*

8

The Proposed Intervenors clear this low hurdle. Without intervention, they have no way to "defend their concrete interests" in, among other things, ensuring fair and orderly elections conducted in accordance with established rules. *Shays*, 414 F.3d at 86. Plaintiffs' suit could "fundamentally alter the environment" for future elections by changing Ohio's voting rules. *Id.* For example, Plaintiffs seek an injunction preventing Secretary LaRose from enforcing a provision of House Bill 458 governing the number of ballot drop boxes a county may provide. Ohio Rev. Code § 3509.05(C) (effective April 7, 2023). An injunction prohibiting this provision could force the Ohio Republican Party to face a "broader range of competitive tactics than" the State "would otherwise allow," *Shays*, 414 F.3d at 86, and it could directly prejudice certain candidates in future elections. An injunction could likewise prevent the Election Workers from administering Ohio's duly enacted rules for free, fair, and trusted elections and could dilute the Election Workers' votes by requiring Ohio to count invalid ballots and by permitting an increased risk of voter fraud and other irregularities. It is thus at least "possible" that the Proposed Intervenors' interests would be impaired "if intervention is denied." *Miller*, 103 F.3d at 1247.

### 4. The existing parties do not adequately represent the Proposed Intervenors' interests.

None of the existing parties adequately represent the Proposed Intervenors' interests. As with the previous requirement, the burden to show inadequate representation "should be treated as minimal." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972). The mere "potential for inadequate representation" is enough. *Grutter*, 188 F.3d at 400; *Trbovich*, 404 U.S. at 538 n.10. And, consistent with the overall approach to Rule 24, "all reasonable doubts should be resolved" in favor of intervention. 7C Mary Kay Kane, *Federal Practice and Procedure* § 1909 (3d ed. 2020).

The only other defendant, the Ohio Secretary of State, might not adequately represent the Proposed Intervenors' interests. Courts across the country have "often concluded that governmental entities do not adequately represent the interests of aspiring intervenors." *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 736 (D.C. Cir. 2003). That is true here. Secretary LaRose's generalized interest in enforcing the law is distinct from the Proposed Intervenors' private interests. *See Utah Ass'n of Cntys. v. Clinton*, 255 F.3d 1246, 1255–56 (10th Cir. 2001). He has no interest in, for example, electing particular candidates across a wide variety of elections. *Cf. Sierra Club v. Glickman*, 82 F.3d 106, 110 (5th Cir. 1996) (per curiam). He also must consider a "broad spectrum of views, many of which may conflict" with the Proposed Intervenors' specific and targeted interests. *Clinton*, 255 F.3d at 1256. These may include the "expense of defending" the current laws, *Clark v. Putnam County*, 168 F.3d 458, 461–62 (11th Cir. 1999); the "social and political divisiveness of the election issue," *Meek v. Metropolitan Dade County*, 985 F.2d 1471, 1478 (11th Cir. 1993), *abrogated on other grounds by Dillard v. Chilton Cnty. Comm'n*, 495 F.3d 1324 (11th Cir. 2007) (per curiam); and the interests of opposing parties, *In re Sierra Club*, 945 F.2d 776, 779–80 (4th Cir. 1991). These broader interests may affect the way he goes about defending the case—for example, unlike the Proposed Intervenors, by not filing a motion to dismiss to test the legal sufficiency of the complaint. *See La Union del Pueblo Entero*, 29 F.4th at 308. The Proposed Intervenors will instead focus on their private interests, which may well diverge from the Secretary's public interests. *See Cleveland Cnty. Ass'n for Gov't by the People v. Cleveland Cnty. Bd. of Comm'rs*, 142 F.3d 468, 474 (D.C. Cir. 1998) (per curiam). This potential for inadequate representation is plenty to justify intervention under Rule 24(a).

With all of the requirements of Rule 24(a) mandatory intervention met, this Court should grant the Proposed Intervenors' motion.

**B.     Alternatively, the Court Should Grant the Proposed Intervenors Permissive Intervention.**

Even if the Court disagrees that intervention of right is warranted, it should permit the Proposed Intervenors to intervene as a matter of discretion under Rule 24(b), in which case this motion may be granted without addressing the Rule 24(a) factors. *League of Women Voters of Mich. v. Johnson*, 902 F.3d 572, 577 (6th Cir. 2018).

Rule 24(b) authorizes courts to "permit anyone to intervene who, [o]n timely motion . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Permissive intervention is within the Court's discretion. *League of Women Voters*, 902 F.3d at 577. "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

Permissive intervention is amply justified here.

*First*, as explained above, this motion is timely. The Sixth Circuit uses the same timeliness factors for Rule 24(a) and Rule 24(b), *see Blount-Hill v. Zelman*, 636 F.3d 278, 284, 287–88 (6th Cir. 2011), and there should be no dispute that this motion is timely under those factors.

*Second*, the Proposed Intervenors will raise defenses that share many common questions with the parties' claims and defenses. Plaintiffs allege that House Bill 458 is unconstitutional. Like the Secretary, Proposed Intervenors disagree and contend that House Bill 458 is valid and enforceable. Plaintiffs' requested relief could also undermine the Proposed Intervenors' interests. The questions of law and fact that the Proposed Intervenors will raise overlap with the issues already before the Court, and the Proposed Intervenors will add a unique perspective on those issues and to this case. *See Berger*, 142 S. Ct. at 2203; *League of Women Voters*, 902 F.3d at 577; *see also, e.g.*, *Yang v. Kellner*, No. 20 Civ. 3325, 2020 WL 2115412, at *2 (S.D.N.Y. May 3,

2020); *City of Greensboro v. Guilford Cnty. Bd. of Elections*, 2015 WL 12752936, at *1 (M.D.N.C. Oct. 30, 2015).

*Third*, the Proposed Intervenors' intervention will not delay this case or prejudice the original parties. This case has only just begun and intervention should impose no delays. (It should even *expedite* resolution of this case, given that the Proposed Intervenors' motion to dismiss should lead the Court to dismiss the complaint before discovery, summary judgment, and trial.) The Proposed Intervenors will follow any schedule the Court sets. Allowing intervention would prevent piecemeal litigation and the need for collateral challenges to a settlement or appeals from an order that may prejudice them.

## CONCLUSION

For these reasons, the Proposed Intervenors respectfully ask the Court to grant their motion to intervene as defendants in this case.

Dated: March 21, 2023　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　/s/  James R. Saywell
　　　　　　　　　　　　　　　　　　　　　James R. Saywell (92174)
　　　　　　　　　　　　　　　　　　　　　E-mail: jsaywell@jonesday.com
　　　　　　　　　　　　　　　　　　　　　JONES DAY
　　　　　　　　　　　　　　　　　　　　　North Point, 901 Lakeside Avenue
　　　　　　　　　　　　　　　　　　　　　Cleveland, OH 44114
　　　　　　　　　　　　　　　　　　　　　Telephone:  (216) 586-3939
　　　　　　　　　　　　　　　　　　　　　Facsimile:   (216) 579-0212

　　　　　　　　　　　　　　　　　　　　　John M. Gore*
　　　　　　　　　　　　　　　　　　　　　E-mail: jmgore@jonesday.com
　　　　　　　　　　　　　　　　　　　　　E. Stewart Crosland*
　　　　　　　　　　　　　　　　　　　　　E-mail: scrosland@jonesday.com
　　　　　　　　　　　　　　　　　　　　　JONES DAY
　　　　　　　　　　　　　　　　　　　　　51 Louisiana Avenue, N.W.
　　　　　　　　　　　　　　　　　　　　　Washington, D.C. 20001
　　　　　　　　　　　　　　　　　　　　　Telephone:  (202) 879-3939
　　　　　　　　　　　　　　　　　　　　　Facsimile:  (202) 626-1700

　　　　　　　　　　　　　　　　　　　　　Sarah E. Welch (99171)
　　　　　　　　　　　　　　　　　　　　　E-mail: swelch@jonesday.com
　　　　　　　　　　　　　　　　　　　　　Jesse T. Wynn (101239)
　　　　　　　　　　　　　　　　　　　　　E-mail: jwynn@jonesday.com
　　　　　　　　　　　　　　　　　　　　　JONES DAY
　　　　　　　　　　　　　　　　　　　　　North Point, 901 Lakeside Avenue
　　　　　　　　　　　　　　　　　　　　　Cleveland, OH  44114
　　　　　　　　　　　　　　　　　　　　　Telephone:  (216) 586-3939
　　　　　　　　　　　　　　　　　　　　　Facsimile:  (216) 579-0212

　　　　　　　　　　　　　　　　　　　　　*Attorneys for Proposed Intervenors*

　　　　　　　　　　　　　　　　　　　　　 **Pro hac vice* application forthcoming*

## CERTIFICATE OF SERVICE

I certify that on March 21, 2023, a copy of the foregoing Motion to Intervene was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

/s/ James R. Saywell

James R. Saywell
*Attorney for Proposed Intervenors*

14